IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-79 |
| | ) | |
| v. | ) | |
| | ) | |
| Desmond I. Chizoba, | ) | |
| d/b/a Liberty Tax Service and Kish Tax Service, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## UNITED STATES OF AMERICA'S COMPLAINT
## FOR PERMANENT INJUNCTION AND OTHER RELIEF

The United States, for its complaint against Defendant Desmond I. Chizoba, alleges as follows:

1.      This is a civil action brought by the United States under 26 U.S.C. (the Internal Revenue Code ("I.R.C.")) §§ 7402, 7407, and 7408 to permanently enjoin Defendant Desmond I. Chizoba from acting as a tax return preparer and from directly or indirectly owning a tax return preparation business.  The United States also seeks an order, pursuant to I.R.C. § 7402, requiring Chizoba to disgorge to the United States all gross receipts that he and his businesses received from the preparation of federal tax returns that contained false or fraudulent claims.

### Jurisdiction and Venue

2.      Jurisdiction is conferred on this Court by 28 U.S.C §§ 1340 and 1345 and I.R.C. § 7402.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and I.R.C. §§ 7407(a) and 7408(a) because Defendant Desmond Chizoba resides in this judicial district,

Defendant conducted business in this judicial district, and a substantial portion of the events giving rise to this action occurred within this judicial district.

## Authorization

4.     This action has been authorized by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General, pursuant to I.R.C. §§ 7402, 7407, and 7408.

## Defendant's Tax Return Preparation Activities

5.     Desmond I. Chizoba is a resident of Plano, Texas.

6.     Since at least 2007, Defendant Desmond I. Chizoba has been a tax return preparer.  He personally prepares tax returns for compensation and employs others who prepare tax returns for compensation.

7.     In 2012, Defendant Desmond I. Chizoba purchased three tax preparation store locations in Texas from the national franchisor of Liberty Tax Service.  Chizoba then operated these locations as Liberty Tax Service stores and used Liberty Tax Service software to prepare tax returns until February 2017.  Chizoba has also used the name "Kish Tax Service" for his tax return preparation business.  Chizoba's stores are no longer affiliated with Liberty Tax Service.

8.     From at least 2015 to the present, Chizoba has personally prepared false or fraudulent tax returns that understated customers' federal income tax liabilities and/or claimed fraudulent tax refunds.

9.     Over the last five years, the vast majority of the tax returns personally prepared by Chizoba included a tax refund claim.

| Processing Year | Total Number of Returns Prepared | Number of Returns Claiming a Refund | Percent of Returns Claiming a Refund |
|---|---|---|---|
| 2019 | 820 | 751 | 92% |
| 2018 | 936 | 872 | 93% |
| 2017 | 1,121 | 1,103 | 95% |

| 2016 | 1,040 | 995 | 96% |
| 2015 | 857 | 815 | 95% |

10.     Chizoba makes false claims on his customers' returns that improperly increase the customers' refunds, including by:

A.     Fabricating sole proprietor businesses and reporting substantial losses on Schedule C of Form 1040 federal income tax returns to fraudulently reduce the amount of his customers' reported net income;

B.     Falsely claiming the Earned Income Tax Credit ("EITC"), including disregarding due diligence requirements in order to fraudulently maximize the EITC by claiming false filing status, such as improper Head of Household status when the customer is actually married and therefore ineligible to claim Head of Household status;

C.     Fabricating itemized deductions on Schedule A of Form 1040 federal income tax returns, including for unreimbursed employee business expenses and charitable contributions; and

D.     Claiming bogus education credits, including the American Opportunity Tax Credit.

11.     Customers often have no knowledge that Chizoba has prepared and filed false tax returns on their behalf.

12.     The goal of Chizoba's tax-fraud scheme is to obtain false refunds for his customers—refunds that his customers were not entitled to receive or refunds in excess of the amounts his customers were entitled to receive—enabling him to charge excessive fees for his services.

*Fabricated Schedule C Businesses and Expenses*

13.     Individuals who do business as sole proprietorships report their income and expenses on Schedule C of Form 1040 federal income tax returns.

14.     Chizoba prepares tax returns for his customers reporting non-existent businesses on Schedule C forms.

15.     Typically, these customers have actual income, such as wages from an employer reported on a Form W-2.  But Chizoba invents a business, which never existed, for which he reports substantial expenses on Schedule C with little or no income.  The resulting phony business net loss offsets the customer's wages and reduces the customer's reported taxable income.  As a result, Chizoba fraudulently reduces the customer's income tax liability and, in most cases, simultaneously increases the amount of the customer's refund claim.

16.     For example:

A.     Chizoba prepared and filed federal income tax returns for Customer 1 for tax years 2014, 2015, and 2016.  Customer 1 was employed as a nurse in the health insurance industry from 2014 through 2016.  Customer 1 did not own a business during 2014, 2015, or 2016.  Customer 1 only provided Chizoba with copies of her Forms W-2 and her driver's license, and Customer 1 did not have any discussion with Chizoba regarding owning a business during these tax years.  On Schedule C attached to Customer 1's 2014, 2015, and 2016 tax returns, Chizoba falsely reported that Customer 1 owned a business.  On the 2014 and 2015 returns, Chizoba identified the profession only as "business"; on the 2016 return he identified it as "care giver."  Chizoba falsely reported that Customer 1 lost, through this fictitious business, $15,496 in 2014, $17,696 in 2015, and $29,510 in 2016.  Customer 1 did not provide this information to Chizoba and was not aware

Chizoba reported it on her returns.  By reporting these phony business losses, Chizoba improperly claimed inflated refunds of $9,053 on Customer 1's 2014 tax return, $8,865 on Customer 1's 2015 tax return, and $9,336 on Customer 1's 2016 tax return.

B.     Chizoba prepared and filed federal income tax returns for Customer 2 for tax years 2017 and 2018.  Customer 2 was employed in the freight industry from 2017 through 2018.  Customer 2 did not own a business during 2017 or 2018.  Customer 2 did not inform Chizoba he owned a business during these tax years and did not provide any records to Chizoba showing that he owned a business.  On Schedule C attached to Customer 2's 2017 and 2018 tax returns, Chizoba falsely reported that Customer 2 owned a business Chizoba identified as "transportation."  Chizoba reported that Customer 2 lost, through this fictitious business, $25,902 in 2017 and $19,815 in 2018.  Customer 2 did not provide this information to Chizoba and was not aware Chizoba reported it on his returns.  By reporting these fake business losses, along with phony charitable contributions described in paragraph 28.A, below, Chizoba improperly claimed inflated refunds of $8,508 on Customer 2's 2017 tax return and $6,597 on Customer 2's 2018 tax return.

C.     Chizoba prepared and filed federal income tax returns for Customer 3 for tax years 2014, 2015, and 2016.  Customer 3 was employed in the auto repair and retail industries from 2014 through 2016.  Customer 3 did not own a business during 2014, 2015, or 2016.  Customer 3 only provided Chizoba with copies of his Forms W-2, retirement account statement, social security card, and driver's license, and Customer 3 did not inform Chizoba that he owned a business during these tax years.  On Schedule C attached to Customer 3's 2014, 2015, and 2016 tax returns, Chizoba falsely reported that

Customer 3 owned an auto repair business.  Chizoba reported that Customer 3 lost, through this fictitious business, $15,372 in 2014, $23,993 in 2015, and $22,685 in 2016. Chizoba did not mention to Customer 3 anything about owning a business during these tax years.  Customer 3 did not provide this information to Chizoba and does not know the origin of this information.  By reporting these phony business losses, Chizoba improperly claimed inflated refunds of $8,178 on Customer 3's 2014 tax return, $8,283 on Customer 3's 2015 tax return, and $8,035 on Customer 3's 2016 tax return.

D.      Chizoba prepared and filed federal income tax returns for Customer 4 for tax years 2017 and 2018.  Customer 4 was employed in the health care industry from 2017 through 2018.  Customer 4 did not own a business during 2017 or 2018. Customer 4 only provided Chizoba with copies of his Forms W-2, social security card, and driver's license, and Customer 4 did not inform Chizoba that he owned a business during these tax years.  On Schedule C attached to Customer 4's 2017 and 2018 tax returns, Chizoba falsely reported that Customer 4 owned a home health care services business.  Chizoba reported that Customer 4 lost, through this fictitious business, $16,454 in 2017 and $18,976 in 2018.  Customer 4 did not provide this information to Chizoba. By reporting these phony business losses, Chizoba improperly claimed an inflated refund of $4,130 on Customer 4's 2017 tax return and a bogus refund of $1,435 on Customer 4's 2018 tax return instead of the balance due that Customer 4 properly owed.

E.      Chizoba prepared and filed federal income tax returns for Customer 5 for tax years 2014, 2015, and 2016.  Customer 5 was employed as a cement truck driver from 2014 through 2016.  Customer 5 did not own a business during 2014, 2015, or 2016. Customer 5 only provided Chizoba with copies of her Forms W-2, driver's license, social

security card, and receipts related to her car, and Customer 5 did not inform Chizoba that she owned a business during these tax years.  On Schedule C attached to Customer 5's 2014, 2015, and 2016 tax returns, Chizoba falsely reported that Customer 5 owned a business.  Chizoba identified the profession as "All Personal SVCS."  Chizoba reported that Customer 5 lost, through this fictitious business, $16,795 in 2014, $17,729 in 2015, and $23,392 in 2016.  Customer 5 did not provide this information to Chizoba and does not know the origin of this information.  By reporting these phony business losses, Chizoba improperly claimed inflated refunds of $3,745 on Customer 5's 2014 tax return, $5,033 on Customer 5's 2015 tax return, and $5,241 on Customer 5's 2016 tax return.

F.      Chizoba prepared and filed federal income tax returns for Customer 6 for tax years 2016, 2017, and 2018.  Customer 6 was employed by the City of Plano, Texas from 2016 through 2018.  Customer 6 did not own a business during 2016, 2017, or 2018. Customer 6 only provided Chizoba with copies of his Form W-2, social security card, and driver's license, and Customer 6 did not inform Chizoba that he lost money operating a business during these tax years.  On Schedule C attached to Customer 6's 2016 and 2018 tax returns, Chizoba falsely reported that Customer 6 owned a landscape services business.  Chizoba reported that Customer 6 lost, through this fictitious business, $17,039 in 2016 and $18,998 in 2018.  Customer 6 did not provide this information to Chizoba. By reporting these fake business losses, along with phony charitable contributions described in paragraph 28.B, below, Chizoba improperly claimed inflated refunds of $3,033 on Customer 6's 2016 tax return and $2,402 on Customer 6's 2018 tax return.

G.      Chizoba prepared and filed federal income tax returns for Customer 7 for tax years 2015 and 2016.  Customer 7 was employed as an administrative assistant from

2015 through 2016.  Customer 7 did not own a business during 2015 or 2016.

Customer 7 only provided Chizoba with copies of her Form W-2 and information about

her banking, mortgage, and property taxes, and Customer 7 did not have any discussion

with Chizoba regarding owning a business during a these tax years.  On Schedule C

attached to Customer 7's 2015 and 2016 tax returns, Chizoba falsely reported that

Customer 7 owned an "admin" business.  Chizoba reported that Customer 7 lost, through

this fictitious business, $16,877 in 2015 and $19,178 in 2016.  Customer 7 did not

provide this information to Chizoba, does not know the origin of the information, and

was not aware Chizoba reported it on her returns.  By reporting these phony business

losses, Chizoba improperly claimed inflated refunds of $6,134 on Customer 7's 2015 tax

return and $6,326 on Customer 7's 2016 tax return.

      H.     Chizoba prepared and filed federal income tax returns for Customer 8 for

tax years 2014, 2015, 2016, and 2017.  Customer 8 was employed in the in-home living

assistance industry from 2014 through 2017.  Customer 8 did not own a business during

2014, 2015, 2016, or 2017.  Customer 8 only provided Chizoba with copies of her

Form W-2, identification, social security card, and other identification information.  And

Customer 8 did not inform Chizoba that she owned a business during these tax years or

otherwise have any discussion with Chizoba regarding owning a business during these

tax years.  On Schedule C attached to Customer 8's 2014, 2015, 2016, and 2017 tax

returns, Chizoba falsely reported that Customer 8 owned a healthcare services business.

Chizoba reported that Customer 8 lost, through this fictitious business, $31,783 in 2014,

$22,886 in 2015, $28,122 in 2016, and $18,993 in 2017.  Customer 8 did not provide this

information to Chizoba.  By reporting these fake business losses, along with phony

charitable contributions described in paragraph 28.C, below, Chizoba improperly claimed

inflated refunds of $11,522 on Customer 8's 2014 tax return, $10,505 on Customer 8's

2015 tax return, $10,863 on Customer 8's 2016 tax return, and $3,367 on Customer 8's

2017 tax return.

I.      Chizoba prepared and filed federal income tax returns for Customer 9 for

tax years 2015, 2016, and 2017.  Customer 9 was employed as a waiter for restaurants

from 2015 through 2017.  Customer 9 did not own a business during 2015, 2016, or 2017.

Customer 9 only provided Chizoba with copies of his Form W-2 and social security card,

and Customer 9 did not inform Chizoba that he owned a business during these tax years.

On Schedule C attached to Customer 9's 2015, 2016, and 2017 tax returns, Chizoba

falsely reported that Customer 9 owned a "waiter" business.  Chizoba reported that

Customer 9 lost, through this fictitious business, $17,604 in 2015, $20,753 in 2016, and

$15,631 in 2017.  Customer 9 did not provide this information to Chizoba, and Chizoba

did not explain the items reported on the return to him.  By reporting these fake business

losses, along with phony unreimbursed employee expenses and charitable contributions

described in paragraph 28.D, below, Chizoba improperly claimed inflated refunds of

$1,862 on Customer 9's 2015 tax return, $2,036 on Customer 9's 2016 tax return, and

$1,022 on Customer 9's 2017 tax return.

J.      Chizoba prepared and filed joint federal income tax returns for

Customers 10 and 11, a married couple, for tax years 2014, 2015, 2016, and 2017.

Customer 10 was employed in the building maintenance industry from 2014 through

2017, and Customer 11 was employed in the senior living and food service industries

from 2014 through 2017.  Neither Customer 10 nor Customer 11 owned or operated a

business during 2014, 2015, 2016, or 2017.  Customer 10 only provided Chizoba with

copies of his and Customer 11's Forms W-2, property tax and HOA receipts, and records

of interest earned in their bank accounts.  Neither Customer 10 nor Customer 11 had any

discussion with Chizoba regarding owning a business during these tax years.  On

Schedule C attached to Customers 10 and 11's 2014 and 2015 tax returns, Chizoba

falsely reported that Customer 10 owned a sales business.  On Schedule C attached to

Customers 10 and 11's 2016 and 2017 tax returns, Chizoba falsely reported that

Customer 11 owned a beauty care business.  Chizoba reported that Customers 10 and 11

lost, through these fake businesses, $15,828 in 2014, $22,767 in 2015, $16,880 in 2016,

and $19,060 in 2017.  Customers 10 and 11 did not provide this information to Chizoba

and were not aware Chizoba reported it on their returns.  By reporting these phony

business losses, Chizoba improperly claimed inflated refunds of $7,143 on Customers 10

and 11's 2014 tax return, $7,547 on Customers 10 and 11's 2015 tax return, and $5,625

on Customers 10 and 11's 2016 tax return, and a bogus refund of $659 instead of the

balance due that Customers 10 and 11 properly owed on their 2017 tax return.

K.       Chizoba prepared and filed federal income tax returns for Customer 12 for

tax years 2016 and 2017.  Customer 12 was employed in retail sales from 2016 through

2017.  Customer 12 did not own a business during 2016 or 2017.  On Schedule C

attached to Customer 12's 2016 and 2017 tax returns, Chizoba falsely reported that

Customer 12 owned a business.  Chizoba identified the profession as "all personal

service."  Chizoba reported that Customer 12 lost, through this fictitious business,

$39,988 in 2016 and $10,997 in 2017.  Customer 12 does not know why Chizoba

reported this business on his returns.  Customer 12 was not aware that Chizoba reported

it.  By reporting these phony business losses, Chizoba improperly claimed inflated

refunds of $18,388 on Customer 12's 2016 tax return and $9,009 on Customer 7's 2017

tax return.

       L.       Chizoba prepared and filed a joint federal income tax return for

Customers 13 and 14, a married couple, for tax year 2016.  Customer 13 was employed

as an engineer in 2016.  Customer 13 did not own a business during 2016.  Customer 13

only provided Chizoba with copies of his and Customer 14's Forms W-2, identifications,

and social security cards, and Customer 13 did not inform Chizoba that he owned a

business during 2016.  On Schedule C attached to Customers 13 and 14's 2016 tax return,

Chizoba falsely reported that Customer 13 owned an accounting services business.

Chizoba reported that Customer 13 lost, through this fictitious business, $21,008.

Customer 13 did not provide this information to Chizoba and does not know why

Chizoba reported it on his and Customer 14's return.  By reporting these phony business

losses, Chizoba improperly claimed an inflated refund of $3,450 on Customers 13 and

14's 2016 tax return.

       M.      Chizoba prepared and filed federal income tax returns for Customer 15 for

tax years 2015 and 2016.  Customer 15 was employed as an occupational therapist from

2015 through 2016.  Customer 15 did not own a business during 2015 or 2016.

Customer 15 did not inform Chizoba that she owned a business during these tax years.

On Schedule C attached to Customer 15's 2015 and 2016 tax returns, Chizoba falsely

reported that Customer 15 owned a healthcare services business.  Chizoba reported that

Customer 15 lost, through this fictitious business, $29,894 in 2015 and $26,564 in 2016.

Customer 15 was not aware Chizoba reported this information on her returns.  By

reporting these phony business losses, Chizoba improperly claimed inflated refunds of $5,332 on Customer 15's 2015 tax return and $5,524 on Customer 15's 2016 tax return.

N.    Chizoba prepared and filed federal income tax returns for <u>Customer 16</u> for tax years 2014, 2015, and 2016.  Customer 16 was employed in hotel maintenance and housekeeping.  Customer 16 did not own a business during 2014, 2015, or 2016. Customer 16 only provided Chizoba with copies of his Form W-2, driver's license, social security card, and uniform receipts.  On Schedule C attached to Customer 16's 2014, 2015, and 2016 tax returns, Chizoba falsely reported that Customer 16 owned a home health care business.  Chizoba reported that Customer 16 lost, through this fictitious business, $18,567 in 2014, $23,714 in 2015, and $24,382 in 2016.  Customer 16 was not aware Chizoba reported this information on his returns.  By reporting these phony business losses, Chizoba improperly claimed inflated refunds of $6,092 on Customer 16's 2014 tax return, $6,559 on Customer 16's 2015 tax return, and $6,353 on Customer 16's 2016 tax return.

O.    Chizoba prepared and filed federal income tax returns for <u>Customer 17</u> for tax years 2014, 2015, and 2016.  Customer 17 was employed in the food service industry from 2014 through 2015, as a retail customer service representative from 2014 through 2016, and in the New York City housing department from 2015 to 2016.  Customer 17 did not own a business during 2014, 2015, or 2016.  Customer 17 only provided Chizoba with copies of her Form W-2, driver's license, and social security card, and Customer 17 did not inform Chizoba that he owned a business during these tax years.  On Schedule C attached to Customer 17's 2014, 2015, and 2016 tax returns, Chizoba falsely reported that Customer 17 owned a landscaping business.  Chizoba reported that Customer 17 lost,

through this fictitious business, $15,771 in 2014, $14,222 in 2015, and $20,286 in 2016. Customer 17 was not aware Chizoba reported this information on her returns.  By reporting these fake business losses, along with the incorrect filing status described in paragraph 24.A, below, Chizoba improperly claimed inflated refunds of $2,224 on Customer 17's 2014 tax return, $7,894 on Customer 17's 2015 tax return, and $8,073 on Customer 17's 2016 tax return.

P.      Chizoba prepared and filed a federal income tax return for Customer 18 for tax year 2016.  Customer 18 was employed as a truck driver in 2016, and his employer reimbursed his employment-related expenses.  Customer 18 did not own a business during 2016.  Customer 18 only provided Chizoba with copies of his Form W-2, identification, and social security card, and Customer 18 did not give Chizoba any information regarding owning a business during these tax years.  On Schedule C attached to Customer 18's 2016 tax return, Chizoba falsely reported that Customer 18 owned a transportation business.  Chizoba reported that Customer 18 lost, through this fictitious business, $31,648.  Customer 18 did not provide this information to Chizoba and was not aware Chizoba reported it on his return.  By reporting these fake business losses, Chizoba improperly claimed an inflated refund of $4,022 on Customers 18's 2016 tax return.

Q.      Chizoba prepared and filed federal income tax returns for Customer 19 for tax years 2014, 2015, and 2016.  Customer 19 was employed as a call center manager from 2014 through 2016 and as a site manager for a staffing company in 2016. Customer 19 did not own a business during 2014, 2015, or 2016.  Customer 19 only provided Chizoba with copies of his Forms W-2 and identification.  On Schedule C attached to Customer 19's 2014, 2015, and 2016 tax returns, Chizoba falsely reported that

Customer 19 owned a business in a profession Chizoba described on the return as

"services."  Chizoba reported that Customer 19 lost, through this fictitious business,

$23,042 in 2014, $21,286 in 2015, and $21,388 in 2016.  Customer 19 was not aware

Chizoba reported this information on his returns.  By reporting these phony business

losses, Chizoba improperly claimed inflated refunds of $2,979 on Customer 19's 2014

tax return, $2,590 on Customer 19's 2015 tax return, and $2,579 on Customer 19's 2016

tax return.

      R.      Chizoba prepared and filed federal income tax returns for Customer 20 for

tax years 2014, 2015, and 2016.  Customer 20 was employed as a case manager for a

health insurer from 2014 through 2016.  Customer 20 did not own a business during

2014, 2015, or 2016.  Customer 20 did not inform Chizoba that she owned a business

during these tax years.  On Schedule C attached to Customer 20's 2014, 2015, and 2016

tax returns, Chizoba falsely reported that Customer 20 owned a healthcare business.

Chizoba reported that Customer 20 lost, through this fictitious business, $24,729 in 2014,

$24,220 in 2015, and $21,211 in 2016.  Customer 20 did not provide this information to

Chizoba and was not aware Chizoba reported it on her returns.  By reporting these phony

business losses, Chizoba improperly claimed inflated refunds of $9,595 on Customer 20's

2014 tax return, $8,088 on Customer 20's 2015 tax return, and $6,084 on Customer 20's

2016 tax return.

      S.      Chizoba prepared and filed joint federal income tax returns for

Customers 21 and 22, a married couple, for tax years 2015 and 2016.  In 2015 and 2016,

Customer 21 was employed as a customer service representative and a maintenance

worker, and Customer 22 was employed at a retail home improvement store.  Neither

Customer 21 nor Customer 22 owned or operated a business during 2015 or 2016.

Customer 21 only provided Chizoba with copies of their Forms W-2, identification, and

social security card.  On Schedule C attached to Customers 21 and 22's 2015 and 2016

tax returns, Chizoba falsely reported that Customer 21 owned a janitorial services

business.  Chizoba reported that Customer 21 lost, through this fictitious business,

$18,912 in 2015 and $23,065 in 2016.  By reporting these phony business losses, Chizoba

improperly claimed inflated refunds of $7,579 on Customers 21 and 22's 2015 tax return

and $7,508 on Customers 21 and 22's 2016 tax return.

   T. Chizoba prepared and filed federal income tax returns for <u>Customer 23</u> for

tax years 2014 and 2015.  In 2014 and 2015, Customer 23 was employed as a purchasing

manager.  Customer 23 did not own a business during 2014 or 2015.  Customer 23 only

provided Chizoba with copies of his Forms W-2, identification, social security card, and

mortgage interest statement.  On Schedule C attached to Customer 23's 2014 and 2015

tax returns, Chizoba falsely reported that Customer 23 owned an auto repair business.

Chizoba reported that Customer 23 lost, through this fictitious business, $34,918 in 2014

and $22,344 in 2015.  Customer 23 was not aware Chizoba reported it on his returns.  By

reporting these phony business losses, Chizoba improperly claimed inflated refunds of

$7,298 on Customer 23's 2014 tax return and $5,512 on Customer 23's 2015 tax return.

   U. Chizoba prepared and filed federal income tax returns for <u>Customer 24</u> for

tax years 2014, 2015, and 2016.  Customer 24 was employed as a cook at a restaurant

from 2014 through 2015 and worked as a maintenance worker at an apartment complex

during 2014, 2015, and 2016.  Customer 24 did not own a business during 2014, 2015, or

2016.  Customer 24 only provided Chizoba with copies of his Form W-2, identification,

social security cards for himself and his children, and insurance information.
Customer 24 did not have any discussion with Chizoba regarding owning a business
during these tax years.  On Schedule C attached to Customer 24's 2014, 2015, and 2016
tax returns, Chizoba falsely reported that Customer 24 owned a business as a cook.
Chizoba reported that Customer 24 lost, through this fictitious business, $12,840 in 2014,
$19,487 in 2015, and $15,572 in 2016.  Customer 24 did not provide this information to
Chizoba.  By reporting these phony business losses, Chizoba improperly claimed inflated
refunds of $9,623 on Customer 24's 2014 tax return, $10,523 on Customer 25's 2015 tax
return, and $10,548 on Customer 24's 2016 tax return.

     V.     Chizoba prepared and filed a federal income tax return for Customer 25
for tax year 2016.  Customer 25 was employed as a physician in 2016.  Customer 25 did
not own a business during 2016.  Customer 25 only provided Chizoba with copies of his
Form W-2, driver's license, and social security card, and Customer 25 did not inform
Chizoba that he owned a business during 2016.  On Schedule C attached to
Customer 25's 2016 tax returns, Chizoba falsely reported that Customer 25 owned a
healthcare services business.  Chizoba reported that Customer 25 lost, through this
fictitious business, $22,500 in 2016.  Customer 25 was not aware Chizoba reported this
information on his return.  By reporting these fake business losses, along with a false
education credit as described in paragraph 32.A below, Chizoba improperly claimed an
inflated refund of $5,645 on Customers 25's 2016 tax return.

     W.     Chizoba prepared and filed federal income tax returns for Customer 26 for
tax years 2014, 2015, and 2016.  Customer 26 was employed as a shop foreman from
2014 through 2016.  Customer 26 did not own a business during 2014, 2015, or 2016.

Customer 26 only provided Chizoba with copies of his Forms W-2, identification, social security card, and insurance information, and Customer 26 did not inform Chizoba that he owned a business during these tax years.  On Schedule C attached to Customer 26's 2014, 2015, and 2016 tax returns, Chizoba falsely reported that Customer 26 owned an auto body shop.  Chizoba reported that Customer 26 lost, through this fictitious business, $20,098 in 2014, $21,243 in 2015, and $22,912 in 2016.  Customer 26 does not know why Chizoba reported this information on his returns.  By reporting these phony business losses, Chizoba improperly claimed inflated refunds of $3,058 on Customer 26's 2014 tax return, $488 on Customer 26's 2015 tax return, and $2,434 on Customer 26's 2016 tax return.

X.      Chizoba prepared and filed a federal income tax return for Customer 27 for tax year 2016.  Customer 27 was employed as a retail home improvement store and as a car salesman in 2016.  Customer 27 did not own a business during 2016.  Customer 27 neither provided Chizoba with any business documentation nor told Chizoba anything about owning a business during this tax year.  On Schedule C attached to Customer 27's 2016 tax return, Chizoba falsely reported that Customer 27 owned an auto sales business. Chizoba reported that Customer 27 lost, through this fictitious business, $18,796 in 2016. Customer 27 was not aware Chizoba reported this information on his return.  By reporting these phony business losses, Chizoba claimed an improperly inflated a refund of $2,467 on Customers 27's 2016 tax return.

Y.      Chizoba prepared and filed a federal income tax return for Customer 28 for tax year 2016.  Customer 28 was employed in the mortgage industry in 2016. Customer 28 did not own a business during 2016.  Customer 28 only provided Chizoba

with copies of her Form W-2, identification, social security card, and insurance

information, and Customer 28 did not inform Chizoba that she had any income from

owning a business during this tax year.  On Schedule C attached to Customer 28's 2016

tax return, Chizoba falsely reported that Customer 28 owned a hair styling business.

Chizoba reported that Customer 28 lost, through this fictitious business, $15,518 in 2016.

Customer 28 does not know how Chizoba determined these amounts reported on her

return.  By reporting these phony business losses, Chizoba improperly claimed an inflated

refund of $3,432 on Customer 28's 2016 tax return.

*Earned Income Tax Credit Fraud and Due Diligence Failures*

17.     Chizoba prepares tax returns that include fraudulent claims for the Earned Income

Tax Credit ("EITC").

18.     The EITC is a refundable tax credit available to certain working taxpayers with

low to moderate income.  Over certain income thresholds, the amount of the EITC for which

taxpayers may qualify phases out.

19.     Income that can qualify a taxpayer for the EITC includes wage income, reported

by employers on Forms W-2 and by taxpayers on Form 1040 federal income tax returns, as well

as income earned by individuals who do business as sole proprietorships, reported by taxpayers

on Schedule C of Form 1040 federal income tax returns.

20.     Chizboa falsifies information reported on federal income tax returns to claim

EITCs for customers who are not entitled to the credit or to inflate EITC claims.  As described

above, Chizoba fabricates businesses and expenses to reduce his customers' reported earned

income.  In some instances, doing so also resulted in improper claims for the EITC.  For

example, the business losses Chizoba fabricated for Customers 3, 5, 7, 8, 10-11, 15-17, 20-22,

24, and 28 (as described in paragraph 16, subparagraphs C, E, G-H, J, M-O, R-S, U, and Y, above), allowed Chizoba to falsely claim ETICs or to improperly claim overstated EITCs for his customers.

21.     Because of the potential for abuse in claiming the EITC, Congress has authorized the Secretary of the Treasury to impose due diligence requirements on federal tax return preparers claiming the EITC for their customers.  Due diligence requirements mandate that a tax return preparer must conduct an inquiry to verify whether his or her customer qualifies for the EITC amount claimed.  A tax return preparer must not know, or have reason to know, that any information used by the tax return preparer in determining the taxpayer's eligibility for, or the amount of, the EITC is incorrect.  A tax return preparer may not "ignore the implications of information furnished to, or known by, the tax return preparer, and must make reasonable inquiries if the information furnished to the tax return preparer appears to be incorrect, inconsistent, or incomplete."  A tax return preparer must also document compliance with these requirements and keep that documentation for three years.

22.     Chizoba not only failed to comply with the due diligence requirements, he intentionally disregarded due diligence requirements and falsified responses on due diligence questionnaires (Forms 8867).

23.     For example, in an effort to conceal his fraud, Chizoba falsified his due diligence questionnaire responses related to many of the businesses Chizoba fabricated.  Chizoba falsely reported, on Forms 8867 attached to the following customers' tax returns, that he received taxpayers' summaries of expenses related to businesses, even though the businesses did not exist and the customer did not provide *any* information about owning a business to Chizoba:

| Customer No(s). | Tax Year(s) |
|---|---|
| 3 | 2014 2015 |
| 5 | 2014 2015 |
| 7 | 2015 |
| 8 | 2014 2015 |
| 10-11 | 2014 2015 |
| 15 | 2015 |
| 16 | 2014 2015 |
| 17 | 2014 2015 |
| 20 | 2014 2015 |
| 21-22 | 2015 |
| 24 | 2014 2015 |

Similarly, Chizoba falsely reported on Forms 8867 attached to 2016 tax returns for Customers 3, 24, and 28 that he asked adequate questions to prepare complete and correct Schedules C related to the businesses Chizoba fabricated.

24.    For his married customers, Chizoba prepared and filed income tax returns that incorrectly claimed Single or Head of Household status.  For taxpayers who qualify, Head of Household provides advantages over Single (or Married Filing Separately) filing status, such as a larger standard deduction.  But married taxpayers who choose to file separately are ineligible to claim the increased Head of Household standard deduction and the EITC.  By improperly selecting Head of Household status, Chizoba obtained benefits for his customers who were ineligible for them.  For example:

        A.    Chizoba prepared and filed federal income tax returns for <u>Customer 17</u> for tax years 2015 and 2016.  During 2015 and 2016, Customer 17 was married, but Chizoba

reported Head of Household status.  As a result, Chizoba improperly claimed EITCs of $2,941 and $1,993, respectively, on Customer 17's 2015 and 2016 returns.

B.      Chizoba prepared and filed a federal income tax return for <u>Customer 29</u> for tax year 2015.  During 2015, Customer 29 was married.  Yet, Chizoba reported Single status.  As a result, Chizoba improperly claimed an EITC of $3,359 on Customer 29's 2015 return.

C.      Chizoba prepared and filed federal income tax returns for <u>Customer 30</u> for tax years 2014, 2015, and 2016.  During 2014 through 2016, Customer 30 was married. Chizoba knew or should have known that Customer 30 was married, as he had prepared Customer 30's 2014 and 2015 federal income tax returns as Married Filing Jointly with Customer 30's spouse.  Yet, on Customer 30's 2016 return, Chizoba reported Head of Household status, improperly increasing the standard deduction by $3,000.  As an additional result, Chizoba improperly claimed an EITC of $2,089 on Customer 30's 2016 return.

D.      Chizoba prepared and filed a federal income tax return for <u>Customer 31</u> for tax year 2015.  Customer 31 was married in 2015.  Yet, Chizoba reported Single status.  As a result, Chizoba improperly claimed an EITC of $367 on Customer 31's 2015 return.

25.      For Customer 17's 2015 return, Customer 29's 2015 return, Customer 30's 2014 and 2015 returns, and Customer 31's 2015 return, Chizoba checked the boxes on the due diligence questionnaires (Forms 8867) affirmatively indicating that he had determined that the taxpayers' filing statuses were not married filing separately.  That was false.

*Bogus Schedule A Deductions*

26.    Taxpayers who elect to itemize certain federal income tax deductions report these itemized deductions on Schedule A of Form 1040 federal income tax returns.

27.    Chizoba prepares income tax returns reporting bogus itemized deductions on Schedule A forms to improperly or fraudulently reduce his customers' taxable income.  In particular, Chizoba fabricates or falsely inflates his customers' charitable contributions and unreimbursed business expenses.

28.    For example:

A.    As described in paragraph 16.B, above, Chizoba prepared and filed a federal income tax return for <u>Customer 2</u> for tax year 2017.  In 2017, Customer 2 gave approximately $1,000 to charity, which he told Chizoba at the time Customer 2 sought to have his tax return prepared.  On Schedule A attached to Customer 2's 2017 income tax return, Chizoba falsely reported that Customer 2 donated $3,825 to charity.  By reporting these phony charitable contributions, along with the fabricated business losses described in paragraph 16.B, above, Chizoba improperly claimed an inflated refund of $8,508 on Customer 2's 2017 tax return.

B.    As described in paragraph 16.F, above, Chizoba prepared and filed a federal income tax return for <u>Customer 6</u> for tax year 2017.  In 2017, Customer 6 gave approximately $1,000 to charity.  On Schedule A attached to Customer 6's 2017 tax return, Chizoba falsely reported that Customer 6 donated $4,462 to charity.  By reporting these phony charitable contributions, along with fabricated business losses described in paragraph 16.F, above, Chizoba improperly claimed an inflated refund of $3,176 on Customer 6's 2017 tax return.

C.      As described in paragraph 16.H, above, Chizoba prepared and filed a federal income tax return for Customer 8 for tax year 2017.  Customer 8 does not know how much she gave to charity in 2017, and she did not provide any amount to Chizoba. On Schedule A attached to Customer 8's 2017 tax return, Chizoba reported, without meeting due diligence requirements, that Customer 8 donated $4,452 to charity in 2017. By reporting these charitable contributions, along with the fabricated business losses described in paragraph 16.H, above, Chizoba improperly claimed an inflated refund of $3,367 on Customer 8's 2017 tax return.

D.      As described in paragraph 16.I, above, Chizoba prepared and filed federal income tax returns for Customer 9 for tax years 2015, 2016, and 2017.  From 2015 to 2017, Customer 9 worked approximately 80 hours per week as a waiter at two restaurants where he was employed.  From 2015 to 2017, Customer 9's only unreimbursed employment expense was approximately $600 per year for non-stick shoes.  Chizoba never discussed employee expenses with Customer 9.  On Schedule A attached to Customer 9's 2015 through 2017 tax returns, Chizoba falsely reported that Customer 9 incurred the following amounts of unreimbursed employee expenses:

| Tax Year | 2015 | 2016 | 2017 |
|---|---|---|---|
| Total Expenses | $9,157 | $12,400 | $11,922 |
| Portion of total wages: | 15.5% | 21.4% | 20.4% |

In addition to reporting these false employee expenses, from 2015 to 2017, Chizoba erroneously reported on the Schedules A that Customer 9 donated $1,997 to charity in 2015, $2,990 in 2016, and $4,250 in 2017, even though Customer 9 gave less than $500 to charity each year.  By reporting these unreimbursed employee expenses and charitable contributions, along with the fabricated business losses described in paragraph 16.I,

above, Chizoba improperly claimed inflated refunds of $1,862 on Customer 9's 2015 tax return, $2,036 on his 2016 tax return, and $1,022 on his 2017 tax return.

E.      Chizoba prepared and filed a joint federal income tax return for Customers 23 and 32, a married couple, for tax year 2016.  In 2016, Customer 23 was employed as a purchasing manager, and Customer 32 was employed as a housekeeper at a hospital.  Neither Customer 23 nor Customer 32 traveled for work.  On Schedule A attached to Customers 23 and 32's 2016 tax return, Chizoba falsely reported that Customer 23 incurred $9,527 of unreimbursed employee expenses, amounting to 15 percent of Customer 23's total wages.  In addition to these false employee expenses, in 2016, Customers 23 and 32 gave approximately $500 to charity in the form of weekly $10 donations to Customer 23's church, and this is what Customer 23 told Chizoba.  But Chizoba erroneously reported on Schedule A of the 2016 tax return that Customers 23 and 32 donated $3,800 to charity in 2016.  Customer 23 was not aware Chizoba reported this information on his and Customer 32's joint return.  By reporting these phony unreimbursed employee expenses and charitable contributions, Chizoba improperly claimed an inflated refund of $6,978 on Customers 23 and 32's 2016 tax return.

F.      Chizoba prepared and filed a federal income tax return for Customer 33 for tax year 2015.  In 2015, Customer 33 was employed in the payroll department of an automobile retailer.  He did not travel for work, and, even if he had, he would not have incurred unreimbursed employee expenses because his employer reimbursed employees for these expenses.  On Schedule A attached to Customer 33's 2015 tax return, Chizoba falsely reported that Customer 33 incurred $16,662 of unreimbursed employee expenses including $8,349 for driving his personal vehicle 14,520 miles for non-commuting work

travel.  Customer 33 did not provide this information to Chizoba.  By improperly
reporting these travel expenses as deductible, Chizoba claimed an inflated refund of
$6,145 on Customer 33's 2015 tax return.

      G.     Chizoba prepared and filed joint federal income tax returns for
Customers 34 and 35, a married couple, for tax years 2015 and 2016.  From 2015 to
2016, Customer 34 was employed in maintenance for a management services company,
and Customer 35 was employed as a nanny.  From 2015 to 2016, Customer 34 estimates
that he spent $1,000 for work-related tools, and Customer 35 had no unreimbursed
employment expenses.  On Schedule A attached to Customer 34 and 35's 2015 through
2016 tax returns, Chizoba falsely reported that Customer 34 incurred the following
amounts of unreimbursed employee expenses:

| Tax Year | 2015 | 2016 |
|---|---|---|
| Total Expenses | $18,349 | $19,905 |
| Portion of total wages: | 47.5% | 66.8% |

In addition to these grossly inflated expenses, Chizoba erroneously reported on the
Schedules A that Customers 34 and 35 donated $2,060 to charity in 2015 and $2,485 in
2016, even though, from 2015 to 2016, Customer 34 and 35 made no contributions to
charity.  Customers 34 and 35 did not provide this information to Chizoba and were not
aware Chizoba reported these contributions on their returns.  By reporting these phony
unreimbursed employee expenses and charitable contributions, Chizoba improperly
claimed inflated refunds of $8,069 on Customers 34 and 35's 2015 tax return and $8,010
on their 2016 tax return.

      H.     Chizoba prepared and filed federal income tax returns for Customer 36 for
tax years 2015 and 2016.  From 2015 to 2016, Customer 36 was employed as a medical

coder and biller.  From 2015 to 2016, Customer 36 had no unreimbursed employment

expense and did not travel for work.  Customer 36 never discussed employee expenses

with Chizoba for 2015 or 2016.  On Schedule A attached to Customer 36's 2015 and

2016 tax returns, Chizoba falsely reported that Customer 36 incurred the following

amounts of unreimbursed employee expenses:

| Tax Year | 2015 | 2016 |
|---|---|---|
| Total Expenses | $15,709 | $19,745 |
| Portion of total wages: | 33.6% | 42.5% |

By reporting these phony unreimbursed employee expenses, along with false education

credits described in paragraph 32.B, below, Chizoba improperly claimed inflated refunds

of $4,416 on Customer 36's 2015 tax return and $4,078 on her 2016 tax return.

    I.       Chizoba prepared and filed a federal income tax return for Customer 37

for tax year 2016.  In 2016, Customer 37 was employed by the U.S. Postal Service.  In

2016, Customer 37's only unreimbursed employment expense was $385 for uniforms.

On Schedule A attached to Customer 37's 2016 tax returns, Chizoba falsely reported that

Customer 37 incurred $15,220 of unreimbursed employee expenses, amounting to 37.9%

of Customer 37's total wages.  By reporting these phony unreimbursed employee

expenses, Chizoba improperly claimed an inflated refund of $3,324 on Customer 37's

2016 tax return.

    J.       Chizoba prepared and filed a joint federal income tax return for

Customers 38 and 39, a married couple, for tax year 2016.  In 2016, Customer 38 was

employed in the information technology department of a financial management company,

and Customer 39 was employed as a floral designer.  Customer 38 did not travel for

work, and his company reimbursed any expenses he may have had during 2016.  He did

not discuss any work travel for 2016 with Chizoba.  On Schedule A attached to
Customers 38 and 39's 2016 tax return, Chizoba falsely reported that Customers 38 and
39 incurred $15,749 of unreimbursed employee expenses.  By reporting these phony
unreimbursed employee expenses, Chizoba improperly claimed an inflated refund of
$2,523 on Customers 38 and 39's 2016 tax return.

K.    Chizoba prepared and filed federal income tax returns for <u>Customer 40</u> for
tax years 2015 and 2016.  From 2015 to 2016, Customer 40 was employed in the fitness
industry.  He did not have any work-related expenses.  He never travelled overnight, and
his employer reimbursed him for any travel costs he incurred.  He did not change jobs in
2016.  On Schedule A attached to Customer 40's 2015 and 2016 tax returns, Chizoba
falsely reported that Customer 40 incurred the following amounts of unreimbursed
employee expenses:

| Tax Year | 2015 | 2016 |
|---|---|---|
| Total Expenses | $19,470 | $21,982 |
| Portion of total wages: | 41.5% | 25.2% |

Customer 40 did not provide this information to Chizoba and did not know why Chizoba
reported these expenses on his return.  By reporting these phony unreimbursed employee
expenses, Chizoba improperly claimed inflated refunds of $2,180 on Customer 40's 2015
tax return and $2,833 on Customer 40's 2016 tax return.

L.    Chizoba prepared and filed a federal income tax return for <u>Customer 41</u>
for tax year 2016.  In 2016, Customer 41 was employed by a medical waste company.
Customer 41 estimates that he had at most $200 in unreimbursed employment expenses
in 2016; when he traveled for work, his company paid or reimbursed the costs.  On
Schedule A attached to Customer 41's 2016 tax return, Chizoba falsely reported that

Customer 41 incurred $20,104 of unreimbursed employee expenses, amounting to 44

percent of Customer 41's total wages.  In addition to these false employee expenses,

Chizoba erroneously reported on the Schedule A that Customer 41 donated $2,488 to

charity in 2016, even though Customer 41 only donated approximately $650 and some

clothes to charity during 2016.  Customer 41 did not provide information regarding his

employee expenses or charitable contributions to Chizoba because the amounts were

small.  Customer 41 did not provide to Chizoba the falsely inflated amounts reported on

his tax return.  By reporting these phony unreimbursed employee expenses and charitable

contributions, Chizoba improperly claimed an inflated refund of $5,500 on

Customer 41's 2016 tax return.

       M.     Chizoba prepared and filed joint federal income tax returns for

Customer 42 and 43, a married couple, for tax years 2015 and 2016.  From 2015 to 2016,

Customer 42 was employed in the local transit industry, and Customer 43 was employed

by a bank.  In 2015 and 2016, Customers 42 and 43 together had at most $2,000 per year

of unreimbursed employee expenses, which they did not discuss with Chizoba.  On

Schedules A attached to Customers 42 and 43's 2015 and 2016 tax returns, Chizoba

falsely reported that Customers 42 and 43 incurred the following amounts of

unreimbursed employee expenses:

| Tax Year | 2015 (Cust. 42) | 2015 (Cust. 43) | 2016 (Cust. 42) |
|---|---|---|---|
| Total Expenses | $10,465 | $12,708 | $21,465 |
| Portion of total wages: | 16.4% | 25.7% | 32.9% |

Customers 42 and 43 did not know how Chizoba determined these amounts of employee

expenses reported on their returns.  By reporting these phony Schedule A deductions,

Chizoba underreported Customers 42 and 43's tax due in 2015 and 2016, and they

consequently underpaid their taxes in both years.

*Bogus Education Credits*

29.     For eligible taxpayers, education tax credits, including the American Opportunity

Tax Credit, help offset taxpayers' costs of higher education by reducing the amount of tax they

owe or increasing the amount of their refund.  However, only qualified education expenses

incurred at eligible educational institutions by the taxpayer, spouse, or a valid dependent can

serve as the basis for a valid claim for an education tax credit.

30.     Between 2014 and 2019, Chizoba prepared tax returns reporting bogus education

expenses and falsely claiming refundable education credits, including the American Opportunity

Tax Credit.

31.     Unlike many tax credits, a refundable tax credit entitles qualifying taxpayers to

receive refunds even if they have no tax liability.  Chizoba claims false education credits on the

tax returns of customers who did not attend college and had no qualifying education expenses, in

order to generate a larger or bogus refund.

32.     For example:

A.      As described in paragraph 16.V, above, Chizoba prepared and filed a federal

income tax return for Customer 25 for tax year 2016.  In 2016, Customer 25 did not

attend any college or incur any qualifying expenses at any college.  Chizoba falsely

reported on Customer 25's 2016 tax return that Customer 25 paid $3,852 purportedly to

attend the University of North Texas.  As a result, Chizoba falsely claimed education

credits totaling $2,463, including an American Opportunity Tax Credit of $985, on

Customer 25's 2016 tax return.

B.      As described in paragraph 28.H, above, Chizoba prepared and filed federal

income tax returns for <u>Customer 36</u> for tax years 2015 and 2016.  On her 2015 and 2016

tax returns, Customer 36 claimed her son as a dependent.  Customer 36's son attended

boarding school in 2015 and 2016; he did not attend college.  Chizoba falsely reported on

Customer 36's 2015 and 2016 tax returns that Customer 36 paid $3,520 and $4,000,

respectively, for her son to attend North Lake College North Campus.  Customer 36 did

not incur these expenses.  As a result, on Customer 36's tax return, Chizoba falsely

claimed education credits totaling $2,380, including an American Opportunity Tax Credit

of $952; on Customer 36's 2015 tax return, Chizoba falsely claimed education credits

totaling $2,218, including an American Opportunity Tax Credit of $1,000.

33.     Colleges and universities complete IRS Forms 1098-T reporting education

expenses that qualify for education tax credits.  Schools transmit information reported on

Forms 1098-T to the IRS and provide copies to students, who may use the information to claim

education tax credits on their federal income tax returns if they qualify.

34.     For calendar years 2015 to 2019, Chizoba prepared and filed the following

numbers of tax returns claiming education credits.  For each of these years, the IRS has no record

of receiving a Form 1098-T from qualifying institutions to support the education credits claimed

on the following substantial proportions of such tax returns:

| Tax Year | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|
| # Returns w/ Ed Credits | 324 | 381 | 388 | 226 | 242 |
| # Ed Credit Returns w/o Forms 1098-T for education expenses | 212 | 235 | 187 | 91 | 67 |
| % Ed Credit Claims with no Form 1098-T | 65.4% | 63.0% | 48.2% | 40.3% | 27.7% |

**Harm Caused by Defendant**

35.     Chizoba has harmed the public and the United States Treasury by preparing false or fraudulent tax returns.  His practices harmed the public because he prepared false or fraudulent tax returns that understated customers' income tax liabilities and/or overstated their refunds due.

36.     Chizoba has harmed his customers by illegally causing them to incorrectly report their federal tax liabilities and underpay their taxes.  These customers are liable for taxes owed and may be liable for sizeable penalties and interest.

37.     Chizoba's fraudulent practices have harmed the United States Treasury because his customers did not pay taxes they lawfully owed or received tax refunds they were not entitled to receive.

38.     Chizoba further harmed the United States and the public by requiring the IRS to devote resources to detecting his misconduct and to assessing, collecting, or recovering taxes or erroneous tax refunds from Chizoba's customers.

39.     Finally, Chizoba harmed the public at large by undermining public confidence in the federal tax system.  For example, fraudulent claims for the EITC and for education credits damage public confidence in statutory credits meant to encourage low-income workers to maintain employment and to help with taxpayers' costs of higher education, respectively.  And false reporting of income, expense deductions, and fraudulent claims for tax credits damage confidence in a tax system predicated upon accurate self-reporting to the IRS.

40.     The harm to the government and the public will increase unless Chizoba is enjoined because—given the seriousness and pervasiveness of his improper conduct—without an injunction, Chizoba is likely to continue preparing false and fraudulent federal income tax

returns.  In sum, an injunction will serve the public interest because it will put a stop to
Chizoba's misconduct and the harm that such conduct causes the United States and its citizens.

## COUNT I:  INJUNCTION UNDER I.R.C. § 7407

41.     The United States incorporates by reference the allegations contained in
paragraphs 1 through 40.

42.     Under I.R.C. § 7407, the United States may seek an injunction against any tax
return preparer who has engaged in any "fraudulent or deceptive conduct which substantially
interferes with the proper administration of the internal revenue laws," or who has "engaged in
any conduct subject to penalty under section 6694 or 6695."

43.     Under I.R.C. § 7701(a)(36), a "tax return preparer" is defined as a person who
prepares for compensation or who employs one or more persons to prepare for compensation any
return or substantial portion thereof.  Chizoba is a tax return preparer within the meaning of
I.R.C. § 7701(a)(36).

44.     If a return preparer's misconduct is continual or repeated and the court finds that a
narrower injunction (*e.g.*, prohibiting specific enumerated conduct) would not be sufficient to
prevent the preparer's interference with the proper administration of federal tax laws, the court
may enjoin the person from further acting as a return preparer.

45.     Chizoba continually and repeatedly engaged in fraudulent or deceptive conduct
which substantially interferes with the proper administration of the internal revenue laws.
Chizoba continually and repeatedly prepared and filed with the IRS false federal income tax
returns on behalf of his customers.  He prepared and filed returns fabricating businesses on
Schedule C to claim deductions for business losses (see examples in paragraph 16); returns
falsely claiming the Earned Income Tax Credit, including circumventing due diligence

requirements in order to fraudulently maximize the Earned Income Tax Credit and claiming false

filing status to claim an Earned Income Tax Credit for which the customer would otherwise be

ineligible (see examples in paragraphs 20 and 23 to 25); returns fabricating itemized deductions,

including for unreimbursed employee business expenses and charitable contributions (see

examples in paragraph 28); and returns claiming bogus education credits, including the

American Opportunity Tax Credit (see examples in paragraph 32).

46.     Under I.R.C. § 7407(b)(1)(D), Chizoba's continual and repeated fraudulent or

deceptive conduct substantially interfered with the proper administration of the internal revenue

laws and is subject to an injunction.

47.     Chizoba continually and repeatedly engaged in conduct subject to penalty under

I.R.C. § 6694 by preparing federal tax returns that understated his customers' tax liabilities,

including preparing claims for credits and deductions based on fabricated or overstated (i)

businesses and business expenses, (ii) unreimbursed employee expenses and charitable

contributions, and (iii) education expenses.  By fabricating or overstating the expenses

underlying these claims, Chizoba knew or reasonably should have known that these returns he

prepared took unreasonable, unrealistic, frivolous, and fraudulent positions.  By preparing and

filing these returns, Chizoba willfully attempted to understate his customers' tax liabilities and

recklessly or intentionally disregarded IRS rules or regulations.

48.     Chizoba continually and repeatedly engaged in conduct subject to penalty under

I.R.C. § 6695.  The Treasury Regulations promulgated under § 6695(g) prohibit a return preparer

from claiming the EITC without first conducting proper due diligence and documenting that

compliance with the due diligence requirements.

49.     Chizoba violated Treasury Regulations by failing to comply with due diligence requirements for the EITC, and his willingness to falsify information to obtain the EITC for his customers shows reckless or intentional disregard for IRS rules and regulations.  Chizoba ignored, disregarded, or failed to adequately verify information provided by his customers. Chizoba has not conducted required due diligence procedures.  To conceal his failures, Chizoba falsified his due diligence questionnaire responses.

50.     Under I.R.C. § 7407(b)(1)(A), Chizoba's continual and repeated violations of I.R.C. §§ 6694 and 6695 are subject to an injunction.

51.     Injunctive relief is appropriate to prevent this misconduct because, absent an injunction, Chizoba is likely to prepare or assist in preparing more false or fraudulent federal income tax returns.

52.     Chizoba should be permanently enjoined under I.R.C. § 7407 from acting as a federal tax return preparer because a more limited injunction would be insufficient to stop him from further violations of I.R.C. § 6694 and I.R.C. § 6695, as well as from interfering with the proper administration of the tax laws.  Chizoba's fraudulent conduct has not been limited to any single specific enumerated conduct; to the contrary, he has employed numerous fraudulent deductions and claims for tax credits.  Moreover, Chizoba's conduct has been continual and repeated, and his fabrications of business and business deductions is so flagrantly illegal, that he should be permanently barred from acting as a federal tax return preparer and from owning, operating, managing, controlling, working for, or volunteering for any tax return preparation business.

## COUNT II: INJUNCTION UNDER I.R.C. § 7408

53.     The United States incorporates by reference the allegations contained in paragraphs 1 through 40.

54.     Under I.R.C. § 7408(c)(1), a district court may enjoin any person from, *inter alia*, engaging in conduct subject to penalty under I.R.C. § 6701 if injunctive relief is appropriate to prevent recurrence of that conduct.

55.     Section 6701 penalizes any person (1) who aids or assists in, procures, or advises with respect to the preparation of any portion of a federal tax return, refund claim, or other document, (2) who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and (3) knows that, if it is so used, it will result in an understatement of another person's tax liability.

56.     Chizoba caused the preparation of false and fraudulent tax returns and other documents, including preparing, assisting, and/or advising with respect to the presentation and preparation of federal tax returns for customers that he knew would understate the customers' correct tax liabilities.  Chizoba knowingly prepared, assisted, and/or advised with respect to the presentation and preparation of returns claiming false tax credits and deductions, including by reporting fictitious businesses, business expenses, unreimbursed employee expenses, charitable contributions, and education credits.  Chizoba procured and assisted the preparation of false and fraudulent tax returns by preparing and filing tax returns that he knew or should have known were false or fraudulent.  As a result, Chizoba engaged in conduct subject to penalty under I.R.C. § 6701.

57.     To maximize his income from preparing tax returns, Chizoba prepares fraudulent returns, giving him a competitive edge over law-abiding preparers.  It allows Chizoba to exploit his customers by charging them higher fees, while his fraud simultaneously and callously exposes his customers to possible civil and criminal liability.

58.     If the Court does not enjoin Chizoba, he is likely to continue engaging in conduct subject to penalty under I.R.C. § 6701.  Chizoba's preparation of tax returns claiming improper tax credits and deductions is widespread over many customers and tax years.  Injunctive relief is therefore appropriate under I.R.C. § 7408.

## COUNT III: INJUNCTION UNDER I.R.C. § 7402

59.     The United States incorporates by reference the allegations contained in paragraphs 1 through 40.

60.     Under I.R.C. § 7402(a), a court may issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws, even if the United States has other remedies available for enforcing those laws.

61.     Chizoba engaged in conduct that substantially interferes with the enforcement of the internal revenue laws, including by intentionally understating customers' tax liabilities, claiming fraudulent tax refunds, and filing false federal tax returns on behalf of customers.

62.     Unless enjoined, Chizoba is likely to continue engaging in improper conduct, including filing false or fraudulent tax returns on behalf of taxpayers.  If not enjoined from engaging in filing misconduct, Chizoba will inflict irreparable injury upon the United States because the government will wrongfully provide federal income tax refunds to individuals not entitled to receive them, will collect less than the correct amount of tax from individuals who owe taxes to the United States, and will be unable to fully recoup the resulting losses to the U.S. Treasury.

63.     While the United States will suffer irreparable injury if Chizoba is not enjoined, Chizoba will not be harmed by being compelled to obey the law.

64.     Enjoining Chizoba is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop Chizoba's illegal conduct and the harm it causes the United States and Chizoba's customers.

65.     Because no adequate remedy of law is available to prevent further irreparable harm to the United States by Defendants, injunctive relief is appropriate under I.R.C. § 7402(a).

### COUNT IV: DISGORGEMENT

66.     The United States incorporates by reference the allegations contained in paragraphs 1 through 65.

67.     Section 7402 of the Internal Revenue Code authorizes a district court to issue orders, judgments, and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws.  Under I.R.C. § 7402, a court may issue a broad range of remedies, including disgorgement of ill-gotten gains.

68.     Chizoba's conduct, described in paragraphs 5 to 40, substantially interferes with the enforcement of the internal revenue laws and has caused the United States to issue tax refunds to individuals not entitled to receive them.  Chizoba has unjustly profited at the expense of the United States by subtracting his fees from those refunds.  Chizoba received ill-gotten gains by charging fees for the preparation and filing of false or fraudulent tax returns, including but not limited to tax returns that:

A.     Included improper claims for tax refunds, or otherwise understated income, according to the taxpayer or as determined during an IRS audit or taxpayer interview, including by:

i.     fabricating Schedule C businesses and expenses and

ii.     claiming bogus Schedule A deductions;

       B.       Improperly claimed the EITC, overstated claims for the EITC, or claimed the EITC without conducting mandatory due diligence; and

       C.       Claimed bogus education credits.

Disgorgement of these fees charged by Chizoba is therefore appropriate under I.R.C. § 7402(a).

69.      Chizoba is not entitled to these ill-gotten gains.  But for Chizoba's conduct, these improper refunds would not have been issued.

70.      The Court should enter an order under I.R.C. § 7402(a) requiring Chizoba to disgorge to the United States the fees Chizoba collected for the preparation of federal tax returns making false and/or fraudulent claims.

WHEREFORE, the United States of America prays for the following relief:

A.       That the Court find that Chizoba has continually and repeatedly engaged in conduct subject to penalty under I.R.C. §§ 6694, 6695, and 6701, and that injunctive relief is appropriate under I.R.C. §§ 7402, 7407, and 7408 to bar him from acting as a tax return preparer;

B.       That the Court find that Chizoba has substantially interfered with the enforcement and administration of the internal revenue laws, and that injunctive relief is appropriate under I.R.C. §§ 7402(a), 7407(b)(2), and 7408(b)(2) to prevent further misconduct;

C.       That the Court permanently enjoin Chizoba and his representatives, agents, servants, employees, and anyone in active concert or participation with him, from directly or indirectly:

       1.       Acting as a federal tax return preparer, or filing, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than himself;

2.    Filing, providing forms for, or otherwise aiding or assisting in the filing of IRS
Forms 1040 (U.S. Individual Income Tax Return), 1040X (Amended U.S.
Individual Income Tax Return), 8867 (Paid Preparer's Due Diligence Checklist),
8863 (Education Credits), Schedule C (Profit or Loss From Business (Sole
Proprietorships)), or any other IRS forms containing false or fabricated
information;

3.    Owning, operating, managing, controlling, working for, or volunteering for any
tax return preparer or tax return preparation business;

4.    Profiting from any tax return preparation business, including but not limited to
profiting from the sale of any tax return preparation service or the sale of any
product or service sold by a tax return preparation business;

5.    Seeking permission or authorization (or helping or soliciting others to seek
permission or authorization) to file tax returns with an IRS Preparer Tax
Identification Number ("PTIN") and/or IRS Electronic Filing Identification
Number ("EFIN"), or through any other IRS service or program by which one
prepares or files tax returns;

6.    Using, maintaining, renewing, obtaining, transferring, selling, or assigning any
PTIN(s) or EFIN(s);

7.    Electronically transmitting federal tax returns for others;

8.    Representing anyone other than himself before the IRS;

9.    Engaging in any other activity subject to penalty under I.R.C. § 6694, 6695, 6701,
or any other penalty provision of the I.R.C.; and

10.     Engaging in any other conduct that is subject to penalty under the Internal

Revenue Code or that interferes with the proper administration and enforcement

of the internal revenue laws.

D.      That the Court, under I.R.C. §§ 7402 and 7407, enter an order requiring Chizoba

to immediately and permanently close all tax return preparation stores that he owns directly or

through any entity;

E.      That the Court, under I.R.C. §§ 7402 and 7407, enter an order appointing a

receiver to sell all the hard assets, such as computers (after any and all taxpayer information has

been removed), electronics, and furniture, of Chizoba's tax preparation businesses;

F.      That the Court, under I.R.C. § 7402, enter an order barring Chizoba from (1)

selling or transferring to any individual or entity a list of customers, or any customer information

he obtained from operation of his tax return preparation business, and (2) selling to any

individual or entity any proprietary information pertaining to his tax preparation businesses;

G.      That the Court, under I.R.C. §§ 7402, 7407, and 7408, enter an order requiring

Chizoba, within 30 days of receiving the Court's order, to contact by U.S. mail and, if an e-mail

address is known, by e-mail, all persons for whom he or his tax return preparation stores have

prepared federal tax returns, amended tax returns, or claims for refund since January 1, 2015,

enclosing a copy of the executed injunction.  The injunction should require that (i) other than the

executed injunction, no additional materials may be included in the notification to their

customers unless approved by the United States or the Court, and (ii) Chizoba shall file with the

Court, within 10 days thereafter, a sworn certificate stating that he complied with this

requirement;

H.      That the Court, under I.R.C. § 7402, enter an order requiring Chizoba to disgorge to the United States the proceeds (the amount of which is to be determined by the Court) that he received (in the form of fees) for the preparation of tax returns that make or report false or fraudulent claims, deductions, credits, income, expenses, or other information that resulted in the understatement of taxes prepared since 2015 at stores owned, operated, or otherwise controlled by Chizoba;

I.      That the Court, under I.R.C. §§ 7402, 7407, and 7408, order Chizoba to provide to the United States within 30 days of its order a list of the names and addresses of all individuals and entities for whom he has provided tax preparation services since January 1, 2015;

J.      That the Court, under I.R.C. §§ 7402, 7407, and 7408, order Chizoba to provide to the United States within 30 days of its order a list of the names and addresses of all individuals whom he employed to prepare tax returns or otherwise assist in the operation of his tax preparation businesses since January 1, 2015;

K.      That this Court allow the government full post-judgment discovery to monitor Chizoba's compliance with the injunction;

L.      That the Court retain jurisdiction over this action to enforce any permanent injunction against Chizoba; and

M.      That this Court grant the United States such additional relief as the Court deems just and appropriate, including awarding it its costs and expenses incurred herein.

\\

\\

\\

\\

Dated:  February 4, 2020              Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

JOSEPH D. BROWN
United States Attorney

 */s/ Gregory L. Mokodean*
RUSSELL J. EDELSTEIN (MA Bar No. 663227)
GREGORY L. MOKODEAN (OH Bar No. 86880)
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 7238 – Ben Franklin Station
Washington, D.C.  20044
Tel: (202) 616-2704 (Edelstein)
Tel: (202) 307-6554 (Mokodean)
Fax: (202) 514-6770
Russell.J.Edelstein@usdoj.gov
Gregory.L.Mokodean@usdoj.gov
*Attorneys for the United States of America*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | Desmond I. Chizoba, d/b/a Liberty Tax Service and Kish Tax Service |

| (b) County of Residence of First Listed Plaintiff _____ | County of Residence of First Listed Defendant    Collin |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Russell Edelstein, Gregory L. Mokodean<br>U.S. Department of Justice, Tax Division<br>P.O. Box 7238, Ben Franklin Station<br>Washington, DC 20044<br>(202) 616-2704, (202) 307-6554 | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question *(U.S. Government Not a Party)*

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☒ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| | | | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
26 USC §§ 7402, 7407, and 7408

Brief description of cause:
Injunction against tax return prepeparers under §§ 7402(a), 7407 and 7408, and disgorgment remedy under § 7402

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   TBD

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 02/04/2020 | /s/ Gregory L. Mokodean |

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|